Filed 7/31/26  Realtek Semiconductor Corp. v. Winston & Strawn CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| REALTEK SEMICONDUCTOR CORP. et al., | B347209 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 23STCV21994) |
| v. | |
| WINSTON & STRAWN LLP et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Virginia Keeny, Judge.  Affirmed in part and reversed in part.

Halpern May Ybarra Gelberg, Joseph J. Ybarra and Abigail E. Marion for Defendants and Appellants.

Sall Spencer Callas & Krueger, Robert K. Sall, Lara A.S. Callas and Michael A. Sall for Plaintiffs and Respondents.

———————————

Defendants Winston & Strawn LLP (Winston) and one of its attorneys David Paul Enzminger undertook representation of Advanced Micro Devices, Inc. (AMD) in a patent dispute adverse to their former client Realtek Semiconductor Corp. (Realtek) and (depending on whom you believe) then-current or former client Steven Baik (together, Plaintiffs). Plaintiffs responded by suing Winston and Enzminger (together, Defendants) for breach of fiduciary duty, legal malpractice, and breach of contract.

Defendants filed an anti-SLAPP[1] motion to strike the claims against them, arguing the injury-causing conduct arose from protected activity and that Plaintiffs could not demonstrate a probability of prevailing on the merits. The trial court denied the motion, finding that the claims at issue did not arise from protected litigation activity but from alleged breaches of Defendants' duties of confidentiality and loyalty.

Defendants now appeal, arguing that claims by a client against its attorney for subsequent adverse litigation conduct on behalf of another party is protected activity under the SLAPP statute. Focusing as we must on the wrong complained of, we largely agree with the trial court; the bulk of the injury-causing conduct alleged in the operative complaint is not protected speech or petitioning activity but Winston and Enzminger's alleged abandonment of their professional responsibilities to Plaintiffs.

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) For clarity, we also refer to a "SLAPP" or "anti-SLAPP" motion as "a special motion to strike"—the language used in the statute (Code Civ. Proc., § 425.16, subd. (b)(1)). Unspecified statutory references are to the Code of Civil Procedure.

But we also conclude that allegations relating to Defendants successfully moving to exclude Baik as a witness in the patent proceedings arise from protected activity. We therefore reverse that portion of the order denying the anti-SLAPP motion and remand for the trial court to decide whether Defendants demonstrated a probability of prevailing on this subset of allegations. We otherwise affirm.

## BACKGROUND

### A. Relevant Allegations in the Operative Complaint

In March 2024, Plaintiffs filed the operative second amended complaint (SAC), alleging claims that Defendants breached their fiduciary duty to Realtek (first cause of action) and to Baik (second cause of action), and committed legal malpractice while representing Baik (third cause of action). Realtek further asserted that Winston breached their engagement contract (fourth cause of action).

The SAC alleges as follows. Realtek is a computer hardware and software company. Baik is an attorney for Realtek.

Beginning in 2014, Defendants represented Realtek in proceedings before the International Trade Commission (ITC). In 2019, Defendants also represented Realtek and its subsidiary in patent litigation. That year, Realtek and Winston negotiated an engagement agreement to establish a "long term relationship" between the two. In the agreement, which is attached as an exhibit to the SAC, Realtek waived conflicts of interest (including future conflicts) arising from Winston's representation of clients adverse to Realtek in a matter "which is not the same or substantially related to this matter" as long as none of Winston's

3

personnel who had worked on Realtek matters or otherwise had access to confidential information represented the adverse party.

On August 19, 2022, Realtek filed a complaint for patent infringement against AMD in the United States District Court for the Northern District of California. (*Realtek Semiconductor Corp. v. Advanced Micro Devices, Inc.* (N.D.Cal., No. 5:22-cv-04769-JSW).) On September 14, 2022, Defendants appeared on behalf of AMD in that action. Baik, on behalf of Realtek, objected to Defendants' representation of AMD.

In December 2022, Realtek "initiated an ITC [i]nvestigation against AMD" (the ITC Proceedings) relating to AMD's infringement of patents covering technology similar to the technology at issue in the 2014 matter in which Defendants represented Realtek. Defendants represented AMD in the ITC Proceedings.

In February and April 2023, Defendants represented Baik during his depositions in a separate, unrelated litigation (the Krafton Litigation) in his personal capacity and as a corporate designee of Krafton. The Krafton Litigation settled in or about November 2023.

"While concurrently representing Baik personally in the Krafton Litigation, . . . Defendants attacked Baik's credibility and sought, on behalf of their other client AMD, to exclude Baik as a witness for Realtek in the . . . ITC [Proceedings]."

Realtek and Baik sought to disqualify Defendants from representing AMD. The administrative law judge (ALJ) in the ITC Proceedings considered both Plaintiffs' motion to disqualify and Defendants' motion to exclude Baik as a witness in the proceeding. The ALJ precluded Baik from testifying, which Plaintiffs allege "on information and belief" was "in part . . . to

4

avoid alleged prejudice to AMD that would arise if . . . Defendants were not permitted to continue representing AMD while Baik would be a witness."

The first cause of action for breach of fiduciary duty alleges that Defendants breached their duties of loyalty and confidentiality to Realtek by representing AMD in a matter in which AMD was adverse to Realtek and where the subject matter at issue was substantially related to Defendants' prior representation of Realtek. Defendants further breached the duty not to disclose any information acquired by virtue of their prior representation. Realtek alleges that had Defendants not breached these duties, Realtek would have obtained a better outcome in the ITC Proceedings, including avoiding legal fees expended in seeking to disqualify Defendants and in resisting AMD's motion to strike Baik as a witness, as well as being able to use Baik as a witness. Realtek sought to recuperate the legal fees it expended in bringing and opposing these motions as well as disgorgement of the fees Defendants received from AMD.

The second cause of action for breach of fiduciary duty alleges that Defendants breached their duties of loyalty and confidentiality to Baik by concurrently representing him and AMD.[2] The SAC alleges that, on information and belief, Defendants also breached the duty not to use any information acquired by virtue of their fiduciary relationship with Baik. The SAC alleges that in seeking to exclude Baik as a witness, Defendants "assailed his credibility," betrayed him, "sought

---

[2] Plaintiffs do not assert the subject matter of the ITC Proceedings was substantially related to the Krafton Litigation in which Defendants represented Baik.

5

judicial assistance to prejudice their own client Baik," and prevented him from fulfilling his obligations to Realtek. As a result, Baik suffered damages, including "extreme emotional" and physical distress. Baik sought damages, disgorgement of fees Defendants earned in representing AMD, and punitive damages.

The third cause of action alleges Defendants committed legal malpractice as to Baik by, among other things, "taking positions adverse to Baik and performing services below the standard of care and under undisclosed conflicts of interest to which there was never an informed consent of the client." The third cause of action also includes the claim that Defendants allegedly "failed to properly advise Baik in the Krafton Litigation, and otherwise failed to perform to the standard of care in representing Baik."

The fourth cause of action alleges that Winston breached its written agreement with Realtek in representing AMD over Realtek's objection.

## B. The Anti-SLAPP Motion and the Court's Ruling

### 1. *Defendants' Motion*

Defendants filed a special motion to strike the SAC's four causes of action and specific allegations within the SAC. They argued each cause of action arose from Defendants' advocacy on behalf of another party, and, thus, involved petitioning activity.

In their briefing, Defendants denied they still represented Baik at the time of the ITC Proceedings. Defendants also described the circumstances giving rise to their motion to exclude Baik as a witness from the ITC Proceedings and submitted evidence in support thereof. That evidence showed the following: Defendants' primary argument in seeking to strike Baik was that as outside counsel for Realtek in the ITC Proceedings, Baik had

6

had access to confidential business information (CBI) of Realtek's competitors, including AMD. Under the operative protective order in the ITC Proceedings, CBI produced in discovery could be reviewed only by outside counsel. Thus, permitting Baik to testify as a fact witness with this knowledge would be contrary to the protective order and prejudicial to AMD. Defendants also argued that American Bar Association Model Rules advised against an attorney-advocate also serving as a fact witness in the same proceeding.

In response to the motion to exclude Baik as a witness, Plaintiffs argued that Defendants should be disqualified. Plaintiffs argued Defendants' motion to exclude Baik as a witness in the ITC Proceedings while they concurrently represented him in the Krafton Litigation underscored the impropriety of Defendants' adverse representation of AMD.

After hearing argument, the ALJ granted the motion to exclude Baik as a witness for two reasons. First, Baik would "wear[] two hats" and "blur the lines" between advocate and witness, forcing the ALJ to rule on privilege and ethical issues and causing undue confusion in the proceedings. Second, "the biggest problem" that the ALJ was "very concerned about," was Baik testifying as a fact witness after having had access to CBI in contravention to the protective order. "I don't want to have to report to the General Counsel's Office here at the ITC that I have had a protective order violation which I could have easily prevented." The ALJ also found the likelihood of prejudice to AMD from Baik testifying was high, but the prejudice to Realtek of Baik not testifying was low as Realtek had other witnesses who could testify to the same issues.

The ALJ then heard argument as to whether Defendants should be disqualified from representing AMD. The ALJ ruled Defendants' representation of Baik in the Krafton Litigation did not warrant disqualification because "I barred Mr. Baik from testifying. And, yes, that has prejudiced Realtek, but it hasn't prejudiced them unduly or in any way that I think undermines the integrity of this case because, I mean, to be blunt, he never should have been offered up as a witness in the first place." The ALJ also stated that Baik was not a party to the proceedings. The ALJ further found that Defendants' prior representation of Realtek was not substantially related to the subject matter of the ITC Proceedings and denied the motion for disqualification.

### 2. *Plaintiffs' Opposition*

In their opposition to the section 425.16 motion to strike, Plaintiffs argued none of the alleged wrongful conduct in the SAC arose from protected activity. With respect to the issue of excluding Baik as a witness from the ITC Proceedings, Plaintiffs argued the ALJ concluded that Defendants' representation of Baik in the Krafton Litigation did not warrant disqualification because the ALJ's ruling barring Baik from testifying meant that the conflict would not taint the investigation.

### 3. *The Trial Court's Ruling*

The trial court denied Defendants' special motion to strike. It stated, "Where, as here, a plaintiff's claims arise from breach of duties of confidentiality and loyalty, the fact that the vehicle for that breach includes litigation activity on behalf of another client does not render an attorney's alleged misconduct subject to anti-SLAPP protection per se, as it might for an entirely unrelated third party suing under the same circumstances." The court concluded that "Plaintiffs' claims arise from bona fide allegations

8

that Defendants breached their duties, not simply from Defendants' conduct undertaken on behalf of AMD." Because the court's first prong finding required it to deny the anti-SLAPP motion, the court did not consider the second anti-SLAPP prong.

## DISCUSSION

### A.    General Legal Principles and Standard of Review

The Legislature enacted section 425.16 "[t]o combat lawsuits designed to chill the exercise of free speech and petition rights." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).)  Thus, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

When considering whether to strike a claim, courts undertake a two-prong analysis.  "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) "In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, citing § 425.16, subd. (b).)

In *Park, supra*, 2 Cal.5th 1057, our Supreme Court set forth how to determine whether a defendant has made a prima facie showing of speech or petitioning rights for purposes of section 425.16:  "A claim arises from protected activity when that

9

activity underlies or forms the basis for the claim.  [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'  [Citations.]  . . . [T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'  [Citation.]  . . . In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability."  (*Id*. at pp. 1062-1063.)  Courts should be "attuned to and . . . respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Id*. at p. 1064; see *Baral v. Schnitt, supra*, 1 Cal.5th at p. 394 ["Assertions that are 'merely incidental[,]' . . . 'collateral[,]' " or "provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute"].)  "[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted."  (*Park, supra*, 2 Cal.5th at p. 1060.)

"If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success."  (*Baral v. Schnitt, supra*, 1 Cal.5th at p. 384.)  At this second stage, the court " ' "accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." ' "  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 891.)

We review de novo the trial court's grant or denial of a special motion to strike under the anti-SLAPP statute.  (*Park*, *supra*, 2 Cal.5th at p. 1067.)

## B.      Arising from Protected Activity

### 1.      *Prong One Analytical Framework*

Section 425.16, subdivision (e) identifies four categories of acts that are " 'in furtherance of' " a defendant's free speech or petition rights.  Defendants do not specify which categories of section 425.16, subdivision (e) they believe are at issue here, but subdivisions (e)(1) and (e)(2) define statements or writings made before a judicial proceeding or in connection with an issue under consideration by a judicial body to be protected acts.

"The anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation."  (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537.)  Further, "the SLAPP statute protects lawyers sued for litigation-related speech and activity."  (*Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 154.)  But "[n]ot all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16."  (*California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1037.)

In *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, plaintiffs sued their former attorneys for malpractice due to the attorneys' failure while representing plaintiffs to comply with a discovery statute and court orders.  (*Id*. at pp. 627-628.)  The attorneys filed an anti-SLAPP motion, which the trial court denied.  The appellate court affirmed, holding the alleged

11

"garden-variety attorney malpractice" did not arise from the defendants' right to petition, but from their negligent failure to protect their clients' interests in the underlying action. (*Id*. at pp. 627, 632.)

Similarly, clients' claims against their former attorneys for undertaking adverse representation in violation of ethical rules do not arise from protected activity. In *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, the plaintiffs alleged their former attorneys' representation of a rival company with adverse interests violated the duty of loyalty. (*Id*. at pp. 1182-1183.) The defendant attorneys brought an anti-SLAPP motion, arguing that their representation of the plaintiffs' rival was protected activity within the meaning of section 425.16. The trial court granted the motion. (*Id*. at p. 1183.) The appellate court reversed. It stated, "The breach [of the duty of loyalty] occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client. . . . In other words, once the attorney accepts a representation in which confidences disclosed by a former client may benefit the new client due to the relationship between the new matter and the old, he or she has breached a duty of loyalty. The breach of fiduciary duty lawsuit may follow litigation pursued against the former client, but does not arise from it. Evidence that confidential information was actually used against the former client in litigation would help support damages, but is not the basis for the claim. As [the plaintiffs] so aptly put it, their claim is not based on 'filing a petition for arbitration on behalf of one client against another, but rather, for failing to maintain loyalty to, and the confidences of, a client.' " (*Id*. at p. 1189.)

Since *Benasra*, several other courts have held that when clients sue their attorney for breaching duties by undertaking an adverse representation, the wrong complained of for anti-SLAPP purposes is not the representation of the new client, but the abandonment of the old. (See, e.g., *Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303; *Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140, 155; *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 493; *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 732.)

For example, in *Wittenberg*, attorney Yosef Peretz initially represented a business co-owned by two principals named Wittenberg and Bornstein. (*Wittenberg v. Bornstein*, *supra*, 50 Cal.App.5th at p. 307.) Years later, Wittenberg, through new counsel, filed a cross-complaint in an action involving the company, suing Bornstein in the business's name for misconduct. Bornstein, through attorney Peretz, filed a dismissal of the company's cross-complaint with prejudice. Then, in a separate suit, Wittenberg sued Bornstein and Peretz, alleging Peretz (1) represented clients with conflicting interests without obtaining a waiver, (2) used the company's confidential business information against the company, and (3) conspired with Wittenberg's former attorney and Bornstein to file the dismissal of the cross-complaint with prejudice in the earlier action. (*Id*. at p. 310.)

The appellate court held the first and second categories did not constitute protected activity. "Such causes of action arise from Peretz's alleged breaches of his fiduciary and professional obligations, not from the litigation conduct, which is merely incidental to the unprotected conduct. There is no chilling effect on advocacy in such claims; rather, the threat of liability encourages the attorney to act competently and loyally."

13

(*Wittenberg v. Bornstein, supra*, 50 Cal.App.5th at p. 314.) On the other hand, Peretz's involvement in preparing and filing the dismissal of the company's cross-complaint was protected activity within the meaning of prong one. (*Id*. at p. 315.)

2. *Analysis*

a. <u>The Injury-causing Conduct</u>

In analyzing Defendants' claims, we do not consider only the form or label of a cause of action. Instead, "the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'" (*Park, supra*, 2 Cal.5th at p. 1063.)

Defendants identify the alleged wrongful acts as (1) their "serving as counsel to AMD in the ITC Proceeding[s]," and (2) their "[]successful[] motion to strike Baik as a witness for Realtek in the ITC Proceeding[s]." Defendants argue, "On their face, both acts concern [Defendants'] litigation conduct on behalf of AMD and, specifically, positions taken by AMD in the ITC Proceeding[s] (through . . . its counsel) that Plaintiffs allege to have been adverse to them." Defendants conclude that both alleged wrongful acts are based on their advocacy on behalf of AMD, and thus, are litigation activities subject to the anti-SLAPP statute.

Before considering these wrongful acts, we observe that the SAC alleges a third category of wrongful conduct. Plaintiffs allege, "Defendants also failed to properly advise Baik *in the Krafton Litigation*, and otherwise failed to perform to the standard of care in representing Baik." (Italics added.) The third cause of action for legal malpractice incorporates this allegation. Defendants do not offer any argument why this claim, to the

14

extent it depends only on the quality of their representation of Baik in the Krafton Litigation, arises from protected activity. It plainly does not. (*Jespersen v. Zubiate-Beauchamp*, *supra*, 114 Cal.App.4th at p. 632.)

      b.     <u>Legal Representation of AMD</u>

Defendants contend *Wittenberg v. Bornstein*, *supra*, 50 Cal.App.5th 303 and *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658 (*Peregrine*), support their position that their adverse representation of AMD is protected activity.

In *Peregrine*, a bankruptcy trustee (asserting claims on behalf of the company Peregrine and related entities) and investors in a Ponzi scheme (acting on their own behalf and on behalf of a putative class of bilked investors) sued a law firm. They alleged the firm's negligence and misconduct helped the perpetrators of the scheme, including James Hillman (a principal of Peregrine and related entities), avoid detection and prosecution by regulators. (*Peregrine*, *supra*, 133 Cal.App.4th at pp. 665, 668, fn. 4.) "The thrust of plaintiffs' argument is that [the firm] breached a duty owed to them by serving Hillman's needs to the detriment of coclients Peregrine and the [f]unding [e]ntities. Investors were harmed along with these entities, [the] plaintiffs allege, because [the firm]'s stalling and stonewalling tactics delayed the progress of the SEC's investigation and lawsuit and enabled the scheme's perpetrators to solicit—and steal—more money from investors." (*Id*. at pp. 670-671.)

Among other things, the plaintiffs complained that the firm violated ethical rules by failing to disclose potential conflicts of interest or obtain informed consent from all clients as to its joint representation. (*Peregrine*, *supra*, 133 Cal.App.4th at p. 671.)

The entity-plaintiffs also complained the firm abandoned them by withdrawing from the litigation and failing to return their documents. The Court of Appeal observed that none of these claims targeted speech or petitioning activity. (*Ibid*.) But the plaintiffs also complained that the firm opposed the SEC's efforts to obtain restraining orders and to appoint a receiver. (*Peregrine, supra*, 133 Cal.App.4th at p. 671.) The court held such acts necessarily involved written or oral statements made in a judicial proceeding and, thus, were protected activity. (*Ibid*.) Because the causes of action included both protected and unprotected conduct and the protected conduct was not " 'merely incidental' " to the unprotected conduct, the court concluded that the claims arose from protected activity. (*Peregrine*, at pp. 672-673.)

*Peregrine* went on to question *Benasra*, stating, "Where, as here, a cause of action alleges the plaintiff was damaged by specific acts of the defendant that constitute protected activity under the statute, it defeats the letter and spirit of section 425.16 to hold it inapplicable because the liability element of the plaintiff's claim may be proven without reference to the protected activity." (*Peregrine, supra*, 133 Cal.App.4th at p. 674.)

*Peregrine* is distinguishable from the matter before us as the class of investor plaintiffs in that case were not former or current clients of the firm they sued.[3] Cases have long taken a

_____

[3] The company's bankruptcy trustee was also a plaintiff, and it arguably stood in the shoes of the company which was the law firm's former client. The *Peregrine* court focused on the claims asserted by all the plaintiffs and did not separately analyze the bankruptcy trustee's claims. (*Peregrine, supra*, 133 Cal.App.4th at pp. 670-674.) We note in this regard that

16

different approach as between plaintiffs (such as the investor plaintiffs in *Peregrine*) who had no client relationship suing an attorney for undertaking an adverse representation (e.g., *Ramirez v. McCormack* (2025) 113 Cal.App.5th 493, 495; *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 811), and plaintiffs who did have such a client relationship suing their former attorney (e.g., *Wittenberg v. Bornstein, supra*, 50 Cal.App.5th at p. 341; *Benasra v. Mitchell Silberberg & Knupp LLP*, *supra*, 123 Cal.App.4th at p. 1189). Indeed, the *Peregrine* court itself observed the law firm's failure to obtain a conflict waiver while representing clients with adverse interests did *not* involve protected activity. (*Peregrine, supra*, 133 Cal.App.4th at p. 671.) Defendants also ignore the similar holding in *Wittenberg* that the claims based on the firm's representation of clients with conflicting interests without obtaining a waiver and use of the business-client's confidential information did not constitute protected activity. (*Wittenberg v. Bornstein, supra,* 50 Cal.App.5th at pp. 310, 314.) It is these claims that are the most analogous to the first category of wrongdoing Defendants identify as alleged in the SAC.

To the extent Plaintiffs' causes of action and other challenged allegations are based upon their former or current counsel's subsequent and related or concurrent adverse representation, they do not arise from protected activity. (See *Sprengel v. Zbylut, supra*, 241 Cal.App.4th at p. 155 [" 'the

_____

*Peregrine* was decided long before the Supreme Court's decisions in *Baral v. Schnitt, supra*, 1 Cal.5th at pages 393-395 and *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 clarifying that courts should analyze each act supplying a basis for relief to determine whether each of those acts is protected.

17

"activit[ies] that give[] rise to [the defendants'] asserted liability" ' [citation] are undertaking a representation in which they had an irreconcilable conflict of interest"].) "There is no chilling effect on advocacy in such claims; rather, the threat of liability encourages the attorney to act competently and loyally." (*Wittenberg v. Bornstein*, *supra*, 50 Cal.App.5th at p. 314.) Plaintiffs' allegations that they were damaged in the amount they expended in legal fees seeking to disqualify Defendants in the ITC Proceedings or that Defendants used confidential information obtained by virtue of their attorney-client relationships with Plaintiffs, are incidental to and serve as evidence of the wrongful act of abandoning their clients.

  c.  Striking Baik as a Witness in the ITC
      Proceedings

We reach a different conclusion as to Defendants' alleged wrongful act of seeking to exclude Baik as a witness from the ITC Proceedings. As stated above, "A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech.' [Citations.] . . . [T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' " (*Park*, *supra*, 2 Cal.5th at pp. 1062-1063, italics omitted.) "[A] court must look past how the plaintiff characterizes the defendant's conduct to determine, based on evidence presented, whether the plaintiff's claims are based on protected speech or conduct." (Burke, California Practice Guide: Anti-SLAPP Litigation (The Rutter Group 2025) § 3:5; see, e.g., *Navellier v. Sletten, supra*, 29

18

Cal.4th at p. 89, citing § 425.16, subd. (b).) We need not give credence to the complaint's allegations as to a defendant's motivations in the face of contrary evidence. (*Wilson v. Cable News Network, Inc.*, *supra*, 7 Cal.5th at p. 887 [holding a plaintiff's allegations as to the defendant's motivations, such as whether the defendant took certain action for speech-related reasons, cannot be dispositive of the issue and the defendant may submit evidence as to its motives].)

For this set of allegations, the activity that forms the basis of Plaintiffs' claims is Defendants' successful petitioning of the court to exclude Baik from testifying as a witness in the ITC Proceedings, not Defendants' adverse representation of AMD. Baik's claims about the cause of his alleged injuries illustrate this point. (See *Mireskandari v. Edwards Wildman Palmer LLP* (2022) 77 Cal.App.5th 247, 265 [stating a cause of action for breach of fiduciary duty requires a plaintiff to plead and prove that the breach proximately caused damage].) Baik's declaration filed in opposition to the section 425.16 motion explains a significant cause of his emotional distress was his inability to help Realtek in the ITC Proceedings because he was struck as a witness: "I was deeply embarrassed and upset by this outcome [being excluded as a witness from the ITC Proceedings] because it prevented me from doing my job to protect Realtek and gave Winston and AMD an unfair advantage since I would not be allowed to testify in opposition to . . . the opposing attorney with whom I had negotiated the settlement agreement. . . . It was excruciating to be excluded as a witness and not allowed to present Realtek's side of the negotiations. As a result of Defendants' conduct, which I believe were willful and calculated to cause me harm, I have suffered severe and extreme emotional

19

distress, including embarrassment, humiliation, anxiety, sleeplessness, and other more serious issues."

Plaintiffs argue all of Defendants' alleged wrongful conduct falls into the category of abandoning their clients. They attempt to tether the motion to exclude Baik as a witness to Defendants' adverse representation by arguing, "Ultimately, the ALJ struck Baik as a witness to side-step the conflict issue," and alleging that the ALJ precluded Baik from testifying "in part . . . to avoid alleged prejudice to AMD that would arise if . . . Defendants were not permitted to continue representing AMD while Baik would be a witness."

But the record demonstrates that the adverse representation did not drive the motivation to exclude Baik as a witness, and that Plaintiffs' allegations about the motion necessarily arise from protected statements made in a judicial proceeding. As set forth in the motion to exclude Baik and the order granting it, the focus of the motion and the ALJ's primary reason for granting it was that as outside counsel, Baik had had access to CBI and that Baik testifying as a fact witness created significant and unnecessary risk that Baik would violate the protective order. Neither Defendants nor the ALJ identified a desire to avoid the conflict of interest as a reason for striking Baik, although the ALJ acknowledged in later ruling on the motion to disqualify that excluding Baik had mooted any concern about a conflict of interest as to Baik. Thus, Defendants' motion to strike Baik was not (as Plaintiffs suggest) part and parcel of their adverse representation claims but distinct protected litigation activity. (*Wittenberg v. Bornstein*, *supra*, 50 Cal.App.5th at p. 315.)

Nor can Plaintiffs avoid the anti-SLAPP statute by broadly stating (as they have) some of the SAC's challenged allegations to include both protected and unprotected activity.  For example, one can read the SAC to suggest that the conduct underlying Baik's second cause of action for breach of fiduciary duty and his claim for emotional distress damages therein are based on both Defendants having undertaken a representation adverse to him as well as Defendants seeking to exclude him as a witness from the ITC Proceedings.  Plaintiffs cannot avoid an anti-SLAPP motion through artful pleading.  (*Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1010.)  "So long as a 'court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached' with respect to these claims." (*Ibid*.)

We therefore reverse the trial court's order as to the following allegations in the SAC as they expressly or impliedly refer to Defendants' efforts to exclude Baik as a witness in the ITC Proceedings, including Realtek's and Baik's damages flowing therefrom: Paragraphs 1 (lines 5-18), 2, 16 (lines 22-26), 17, 35, 36, 38, 40, 41, 49-50 (in the first cause of action for breach of fiduciary as to Realtek), 52-58 (the entirety of the second cause of action for breach of fiduciary duty as to Baik), and 61-63 (in the third cause of action for legal malpractice).

We decline to reach the second prong as to these claims in the first instance, and remand for the trial court to decide the issue in the ordinary course.  (*Collier v. Harris* (2015) 240 Cal.App.4th 41, 58.)  Because some allegations include both protected and unprotected conduct as discussed above, on remand, the court is to determine whether Plaintiffs can show a probability of prevailing on the first, second, and third causes of

21

action only to the extent their claims are based on Defendants seeking to exclude Baik as a witness from the ITC Proceedings. To the extent these causes of action and the above-identified allegations are based on Defendants' adverse representation independent of the motion to exclude Baik as a witness, including the potential use of confidential information, such allegations are not subject to a prong two analysis for the reasons already stated.

## DISPOSITION

We reverse the trial court's order denying Defendants' section 425.16 special motion to strike as to the following allegations of the SAC: Paragraphs 1 (lines 5-18), 2, 16 (lines 22-26), 17, 35, 36, 38, 40, 41, 49-50 (in the first cause of action for breach of fiduciary as to Realtek), 52-58 (the entirety of the second cause of action for breach of fiduciary duty as to Baik), and 61-63 (in the third cause of action for legal malpractice).  On remand, the court is to determine whether Plaintiffs can show a probability of prevailing on those claims to the extent they are based on Defendants seeking to exclude Baik as a witness from the ITC Proceedings.

We otherwise affirm.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.

We concur:


ROTHSCHILD, P. J.          BENDIX, J.


22